UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:11-CV-38-BR

CARLOS A. ALFORD,                    )
                          Plaintiff, )
                                     )
v.                                   )          ORDER
                                     )
                                     )
W. DEAN PFEIFFER,                    )
                          Defendant. )


       This matter is before the court on defendant's motion to dismiss and *pro se* plaintiff's

motion for declaratory and injunctive relief and multiple motions for summary judgment.

Plaintiff filed several responses in opposition to defendant's motion, a "motion to suppress"

defendant's motion, and, most recently, a document captioned as "New and Material Evidence."

Defendant filed an omnibus response in opposition to a number of plaintiff's filings.

       Plaintiff initiated this action against defendant, Executive Director of the Board for

Correction of Naval Records, based on his discharge from the Marine Corps. According to the

Complaint and documents attached thereto, plaintiff enlisted in the Marine Corps in 1981. (See

Compl. & Attachs., DE ## 6 to 6-3.) On 3 May 1983, plaintiff accepted non-judicial punishment

("NJP") pursuant to Article 15 of the Uniform Code of Military Justice for being absent from his

place of duty. On 20 May 1983, he accepted NJP for testing positive for marijuana use during a

command directed urinalysis. Some time prior to June 1984, he accepted NJP for having an

unopened bottle of alcohol in the barracks area. In June 1984, he received an Other than

Honorable discharge from the Marine Corps.

       Plaintiff claims that his Fourth and Fifth Amendment rights were violated in connection

with his testing for marijuana use and subsequent punishment therefor; that his Sixth

Amendment rights were violated; that the urinalysis testing itself was faulty; and that the military violated its own regulations by not allowing plaintiff to fully consult with his attorney prior to the imposition of Article 15 punishment. Plaintiff requests that the positive urinalysis and resulting NJP be removed from his record; he be restored to the rank of E-3 and advanced to the ranks of E-4 and E-5; his discharge be upgraded to Honorable; and he be awarded back pay, among other things.

Defendant moves to dismiss this action on the grounds that the court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and that plaintiff has failed to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, defendant contends that plaintiff has failed to exhaust his administrative remedies and has failed to meet the pleading requirements of Ashcroft v. Iqbal, 556 U.S. 662 (2009), and that defendant is entitled to qualified immunity. Because the court finds the issue of subject matter jurisdiction dispositive, the court does not address defendant's alternative arguments.

A defendant may challenge the court's jurisdiction in two ways.

> First, the defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." When a defendant makes a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.
>
> In the alternative, the defendant can contend– as the Government does here– "that the jurisdictional allegations of the complaint [are] not true." The plaintiff in this latter situation is afforded less procedural protection: If the defendant challenges the factual predicate of subject matter jurisdiction, "[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations," without converting the motion to a

summary judgment proceeding.  In that situation, the presumption
of truthfulness normally accorded a complaint's allegations does
not apply, and the district court is entitled to decide disputed issues
of fact with respect to subject matter jurisdiction.

Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (citations omitted) (alterations in

original).

There are two threshold requirements that plaintiff must meet before the court can

proceed to review his discharge from the military.

First, there must be an "allegation of the deprivation of a
constitutional right, or an allegation that the military has acted in
violation of applicable statutes or its own regulations."  Second,
the plaintiff must have exhausted the "available intraservice
corrective measures."

Guerra v. Scruggs, 942 F.2d 270, 276 (4th Cir. 1991) (citations omitted).  "[F]ailure to exhaust

intraservice administrative remedies ma[kes] [a] federal claim a nonjusticiable military

controversy."  Williams v. Wilson, 762 F.2d 357, 360 (4th Cir. 1985) (citations omitted).

As noted previously, plaintiff has alleged a deprivation of his constitutional rights and the

military's violation of its own regulations.  Accordingly, plaintiff has met the first requirement

for a justiciable claim challenging a military decision.

Whether plaintiff has exhausted his intraservice remedies warrants further discussion.  To

administratively challenge his or her discharge, a former member of the Marine Corps, like

plaintiff, has two options.  One option is to apply to the Naval Discharge Review Board

("NDRB").  See 10 U.S.C. § 1553; 32 C.F.R. § 724.102.  When the NDRB reviews a discharge,

it determines whether to change the discharge.  32 C.F.R. § 724.207(c).  Plaintiff's other option

for administrative review– one which he has exercised previously– is to apply to the Board for

Correction of Naval Records ("BCNR") for correction of his military record.  See 10 U.S.C. §

3

1552; 32 C.F.R. § 723.2. The BCNR can consider constitutional, statutory, and regulatory violations. See 32 C.F.R. § 723.3(e)(4) (if the BCNR denies an application, it must provide a statement to that effect, which "shall include the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based, including, if applicable, factors required by regulation to be considered for determination of the character of and reason for discharge"). It "may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). And, it may award lost pay and other lost pecuniary benefits as a result of the correction of a military record. Id. § 1553(c)(1). Further, and of particular relevance here, the BCNR may reconsider a final decision "upon presentation by the applicant of new and material evidence or other matter not previously considered by the Board."[1] 32 C.F.R. § 723.9.

Based on documents that both parties filed, it is apparent that plaintiff has challenged his discharge with the BCNR more than once. Plaintiff claims to have applied to the BCNR in October 2003, alleging that he should have been granted a "military medical retirement." (Compl., Attach., DE # 6-1, at 10; see also DE # 57, at 12.) According to plaintiff, the BCNR denied that application in April 2004. (Id.) Plaintiff also states that he applied to the BCNR on 31 October 2009 for correction of his record regarding the faulty urinalysis and that the BCNR denied that application. (Compl., DE # 6, at 3; see also id., Attach., DE # 6-1, at 6; Attach., DE # 6-2, at 4; Attach., DE # 6-3, at 5.) He has attached a copy of what purports to be that 31

---

[1]     New evidence is defined as evidence not previously considered by the Board and
        not reasonably available to the applicant at the time of the previous application.
        Evidence is material if it is likely to have a substantial effect on the outcome.
32 C.F.R. § 723.9.

4

October 2009 application with supporting documentation. (See Compl., Attach., DE # 6-1, at 5-9.) Yet, in documents filed after the complaint, plaintiff claims to have petitioned the BCNR five times between 21 June 2009 and 10 January 2011, without any response from the BCNR. (DE # 52, at 3; DE # 56, at 1; DE # 57, at 5, 9-10.) He also claims the BCNR issued "their final decision denial" in 2006. (DE # 57, at 10.) Plaintiff further claims that during the pendency of an application before the BCNR, he consulted with an attorney, who advised him "to put a stop on [his] case," which plaintiff did on 30 November 2009. (DE # 59, at 2.) After plaintiff determined he could not pay for the attorney, he notified the BCNR on 11 August 2010, requesting that the Board proceed with evaluation of his case. (Id.) Plaintiff claims to have mailed an application for reconsideration on 21 October 2010. (Id.)

In response, defendant submits his declaration under penalty of perjury that:

> . . . .
> 4. In the above-captioned case, Plaintiff submitted applications dated February 10 and March 2, 2006, in which he requested further consideration of a previous application in which he had requested correction of his record to show, among other things, that he received an honorable discharge on June 29, 1984, rather than a discharge under other than honorable conditions. A three-member panel of the BCNR denied his request on May 17, 2006, and issued its decision on June 15, 2006. I signed the decision in my capacity as Executive Director, BCNR. I was not a member of that panel.
> 5. On June 22, 2009, and November 4, 2009, Plaintiff again submitted requests for further consideration of his application, seeking, among other things, correction of his record to show that he received an honorable discharge on June 29, 1984, rather than a discharge under other than honorable conditions.
> 6. On November 16, 2009, Plaintiff, by letter to the BCNR, requested that "the board freeze [his] case until [his] attorney has the chance to review the case." On November 30, 2009, Plaintiff, by letter to me, requested that I "stop processing" his applications for reconsideration submitted in June 2009 and November 2009. On or about November 30, 2009, Plaintiff also submitted a DD Form 149, again requesting that the BCNR "stop

5

processing" these applications.
7. Accordingly, on November 30, 2009, Plaintiff's pending BCNR applications were administratively closed, and his requests for reconsideration were thus disapproved on February 26, 2010.

(Def.'s Decl., DE # 60-1 (alterations in original).) Plaintiff does not contradict this evidence

with any sworn testimony or documentary evidence.

Plaintiff has submitted a number of documents to this court which the BCNR has not

been given the opportunity to consider. First, it does not appear that the BCNR considered the

results of a polygraph examination conducted of plaintiff regarding whether he ever used

marijuana while in the Marine Corps, given that the examination occurred on 22 November 2009

just prior to the BCNR's administratively closing plaintiff's case. (See Compl., Attach., DE # 6-

1, at 12-19.) Second, plaintiff has submitted a medical record associated with his mental health

examination on 18 November 2011 at the Fayetteville VA Medical Center. (DE # 62-2.) Third,

and most importantly, he has recently submitted what he characterizes as "new and material

evidence," consisting of a medical record associated with plaintiff's examination on 20 January

2012 at the Fayetteville VA Medical Center. It appears that the examination was conducted as a

part of plaintiff's application for Veterans disability benefits. The stated purpose of the

examination was "to determine whether the appellant was 'insane' due to a mental health disease

when he committed the offenses that lead [sic] to his dishonorable discharges from service in

June 1984 and in June 1988."[2] (DE # 65-1, at 12.) In this recent record, the examiner opines

that "[i]t is [at] least as likely as not that Mr. Alford was 'insane' due to a mental health disease

when he committed the offenses that lead to his dishonorable discharges from service in June

---

[2]According to the medical record, plaintiff re-enlisted in the Marine Corps in 1985 and was discharged in 1988. (DE # 65-1, at 7.) Plaintiff does not challenge that discharge.

1984 and in June 1988." (Id. at 18.)

The BCNR should be allowed to consider all this information in the first instance, before the court proceeds to analyze the merits of plaintiff's claims surrounding his 1984 discharge. Thus, the court finds that plaintiff has failed to exhaust his intraservice administrative remedies. By so ruling, the court expresses no opinion on the merits or timeliness of any application (or request for reconsideration) plaintiff subsequently files with the BCNR.

Defendant's motion to dismiss is ALLOWED, and plaintiff's motions are DENIED AS MOOT. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. The Clerk is DIRECTED to close this case.

This 21 February 2012.

_____
W. Earl Britt
Senior U.S. District Judge